JUDGE ANDERSEN MAGISTRATE JUDGE KEYS

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

06C 0394

| | | |
|---|---|---|
| **JANICE CAHAJLA,** | § | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | § | |
| | § | **FILED** |
| **v.** | § | |
| | § | J.N |
| **SERGEANT'S PET CARE PRODUCTS, INC.,** | § | JAN 2 3 2006 |
| **Defendant.** | § | |

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S ORIGINAL COMPLAINT

Janice Cahajla, plaintiff, complains of Sergeant's Pet Care Products, Inc., defendant, and respectfully would show the court as follows:

### I. Parties.

1. Janice Cahajla (Cahajla) is a citizen of the State of Illinois and a resident of Cook County, Illinois located in the Northern District of Illinois.

2. Sergeant's Pet Care Products, Inc., (Sergeant) is a privately-held corporation organized under the laws of the State of Nevada with its principal place of business located in Omaha, Nebraska. Sergeants does business in the State of Illinois.

3. Sergeant maintains a website at www.sergeants.com that is available for downloading nationwide and in the Northern District of Illinois.

4. Sergeant distributes its products throughout the United States and in the Northern District of Illinois for sale in pet stores, other retail stores and on-line sales through third parties.

### II. Jurisdiction and Venue.

5. This court has jurisdiction under 15 U.S.C. 1121 since this cause of action arises under the Lanham Act, 15 U.S.C. 1114-1117.

6.   Venue is proper in the Northern District pursuant to 28 U.S.C. Sec.1391 since defendants do business in Illinois and a substantial part of the events giving rise to the claim occurred in this district.

## III.   Factual Background.

7.   Cahajla operates a pet supply business. She has been in the business since 1998.

8.   Cahajla makes, bakes, distributes and sells dog cookies, dog biscuits, dog treats under the trademark "Wagtails."

9.   "Wagtails" is registered by Cahajla with the United States Patent and Trademark Office (PTO) with Registration No. 2583102. The mark was registered by the PTO on June 18, 2002. A copy of the registration is attached as Exhibit A.

10.   The mark has been in continuous use by Cahajla since October 18, 1998 and has been used in interstate commerce since June 15, 2000.

11.   The registered mark is in international class 031 for "animal treats, namely dog cookies, dog biscuits, dog treats, and cat treats."

12.   Cahajla's dog cookies, dog biscuits, dog treats and cat treats are distributed and sold in various states and in Illinois in retail stores, in veterinarians' offices, by mail and over the internet. A copy of the internet home page is attached as Exhibit B to this complained and incorporated by reference herein. It clearly shows the "Wagtails" mark with the "®".

13.   A copy of the label for "Wagtails" dog cookies, dog biscuits, dog treats and cat treats is attached as Exhibit C and incorporated by reference herein. The label clearly shows the "®" with the mark.

14. Over the years that she has been in business, Cahajla has developed both a regional market in the northern Illinois area but also a national market for her dog cookies, dog biscuits, dog treats and cat treats.

15. Cahajla has spent considerable time, energy and money in developing the "Wagtails" trademark. Cahajla's customers identify her goods with the trademark "Wagtails."

16. In addition to the dog and cat treats, Cahajla has been using the mark Wagtails for other products for cats and dogs. For example, Cahajla recently has obtained a notice of allowance from the PTO for the use of the mark Wagtails for blankets and towels for pets and animals.

17. Cahajla also markets the "Wagtails Scrap Book & Photo Album" for cats and dogs and has been doing so since December 2002. She obtained a U.S. trademark registration for "Wagtails" for scrapbook and photo album on May 13, 2003, Registration No. 2716029. A copy of the registration is attached as Exhibit D.

18. On information and belief, since August 2004 Sergeant has been selling dog treats using the mark "Wag'n Tail." A copy of the Sergeant label is attached as Exhibit E.

19. A due diligence search by Sergeant would have readily disclosed the fact that Cahajla had a registered mark for "Wagtails" for the same product line.

20. Sergeant has been marketing the Wag'n Tail treats on its website and has offered the Wag'n Tail treats for sale in the United States, including in Illinois. A copy of Sergeant website description is attached to this complaint as Exhibit F. Sergeant is using the same marketing channels for its Wag'n Tail as Cahajla does for Wagtails.

21. Sergeant claims to be "one of the icons in the United States pet supplies industry" and that the Sergeant brand "is one of the most widely recognized brands in the pet supplies

category with significant brand equity. The brand carries a reputation among consumers for dependable, reliable and quality products." See Exhibit G attached to this complaint.

22. Sergeant is using its market dominance to infringe on the various trademark of Cahajla, to confuse consumers and to dilute the good will of Cahajla's products and her business in general.

23. Sergeant has applied to the PTO for registration of the mark Wag'n Tail in the same international class as Cahajla's mark, namely international class 31 for "edible pet treats and pet foods."

24. Cahajla has not given permission to Sergeant to use the registered mark Wagtails.

25. The terms "Wagtails" and "Wag'n Tail" are similar and are likely to cause confusion or mistake or are likely to deceive as to the source or origin of the goods represented by the marks.

26. The products for "Wagtails" and "Wag'n Tail" are nearly, if not exactly, identical.

27. The marketing channels for "Wagtails" and "Wag'n Tail" are similar if not identical.

28. Since at least March 31, 2005, Sergeant has had actual knowledge that its "Wag'n Tail" mark is confusingly similar and infringes upon the registered mark "Wagtails." On that date Cahajla's attorney sent a letter to Sergeant to withdraw its PTO application for the confusingly similar mark. See Exhibit H attached.

29. On April 18, 2005 Sergeant declined to withdraw the application. See Exhibit I attached.

30. On May 13, 2005 Cahajla renewed her request for Sergeant to withdraw the trademark application and abandon the confusingly similar mark. See Exhibit J attached.

31. Cahajla has received no response from Sergeant to the May 13, 2005 letter.

32. Sergeant has continued to use the infringing "Wag'n Tail" mark on its dog treat product.

33.   Cahajla has received inquires from her customers that reflect that they have become confused as to the source or origin of "Wag'n Tail" and have confused the Sergeant product with Cahajla's product.

34.   Sergeant has and continues to profit from the infringing use of the Wag'n Tails mark.

35.   Sergeant continued infringing use of the mark is deliberate and willful.

36.   By reason of Sergeant's acts, Cahajla has and will suffer damage to her business, reputation and good will as well as the loss of sales and profits she would have made but for the action of Sergeant.

37.   Unless restrained and enjoined, Sergeant will continue to infringe on Cahajla's registered trademark to Cahajla's irreparable harm.

## IV.   Trademark Infringement.

38.   Cahajla restates and realleges paragraphs 1 through 37 of this Complaint as if set forth fully herein.

39.   Cahajla is the registered owner of the trademark "Wagtails."

40.   Cahajla, as owner of the trademark, has all right, title and interest in and to the registered mark.

41.   Sergeant is intentionally infringing on Cahajla's trademark by selling, offering for sale, marketing, advertising, distributing, manufacturing dog treats under the confusingly similar mark to Cahajla's "Wagtails" mark.

42.   Sergeant's use of the confusingly similar mark is without permission or authority from Cahajla, is intended to and is likely to cause confusion, cause mistake or deceive.

43.   Sergeant will continue to infringe Cahajla's "Wagtails" mark and cause irreparable harm unless enjoined by this Court.

## V. False Designation and Unfair Competition.

44. Cahajla restates and realleges paragraphs 1 through 43 of this Complaint as if set forth fully herein.

45. Sergeant's products are marketed, distributed, offered for sale and likely to pass through the same types of establishments as those in which the authentic Cahajla "Wagtails" trademarked goods are marketed, through the same channels of trade and to the same customers in competition with the goods of Cahajla.

46. The use of Sergeant's infringing Wag'n Tail mark in conjunction with the same goods offered for sale by Cahajla under the registered trademark "Wagtails" is intended to and is likely to cause confusion in the minds of the trade and the public, leading them to believe that Sergeant's goods emanates from Cahajla or that Cahajla has approved or sponsored the manufacture and sale of Sergeant's products.

47. The conduct of Sergeant in the unauthorized use of Cahajla's mark on goods sold by Sergeant constitutes unfair competition in violation of 15 U.S.C. Sec. 1125 (a) in an attempt to palm off or permit other to palm off Sergeant's products as Cahajla's product.

48. The conduct of Sergeant in using the confusingly similar mark Wag'nTail without proper authorization creates a false designation of origin as to the source of Sergeant's products, so that the purchasing public, distributors and others may mistakenly believe that the goods distributed and sold by Sergeant is in fact manufactured or authorized by Cahajla.

49. Sergeant will continue to infringe Cahajla's "Wagtails" mark and cause irreparable harm unless enjoined by this Court.

## VI. Request for Jury Trial.

50. Plaintiff requests trial by jury on all issues that may be so tried.

## VII.    Prayer for Relief

Plaintiff requests that upon hearing, the court enter judgment that Sergeant be permanently enjoined from:

- Imitating, copying or making unauthorized use of Cahajla's distinctive "Wagtails" trademark or any other confusingly similar mark;

- Distributing, manufacturing, circulating, selling, offering for sale, advertising, promoting or displaying any dog treat product bearing any copy, reproduction or imitation of "Wagtails."

- Engaging in any activity constituting an infringement of Cahajla's "Wagtails" trademark or Cahajla's rights to use or exploit the same.

- Using any false designation of origin which can, or is likely to, lead the trade or public to believe that any dog treats or related product, distributed or soled by Sergeant, is in any manner associated or connected with Cahajla or is sold, manufactured, licensed, sponsored, approved or authorized by Cahajla.

- Affixing, applying, annexing or using in connection with dog treats or related products, any false designation of origin or any false description or representation.
  Plaintiff further requests that the court enter judgment finding:

- That Sergeant has unfairly competed with Cahajla by the actions complained of herein;

- That Sergeant has infringed on Cahajla's rights in and to Cahajla's federal trademark registration for "Wagtails."

- That Sergeant account for and pay to Cahajla any and all profits derived by Sergeant and damages sustained by Cahajla by reason of Sergeant's false designation of origin, trademark infringement and unfair competition.

- That the Court award Cahajla treble damages for Sergeant's willful and wanton violation of Cahajla's rights.

- That the Court award Cahajla her attorney's fees and costs under 15 U.S.C. 1117.

- That Sergeant destroy its inventory of the goods complained of in this lawsuit.

Respectfully submitted,

RICHARD C. BALOUGH
Attorney for Plaintiff
53 W. Jackson Blvd.
Suite 956
Chicago, IL 60604
312.834.0400
Fax: 312.834.0526

# EXHIBIT A

Int. Cl.: 31

Prior U.S. Cls.: 1 and 46

## United States Patent and Trademark Office

Reg. No. 2,583,102
Registered June 18, 2002

## TRADEMARK
## PRINCIPAL REGISTER

## WAGTAILS

CAHAJLA, JANICE (UNITED STATES CITIZEN)
3736 SOUTH 53RD COURT
CICERO, IL 60804

  FOR: ANIMAL TREATS, NAMELY DOG COOK-
IES, DOG BISCUITS, DOG TREATS, AND CAT
TREATS, IN CLASS 31 (U.S. CLS. 1 AND 46).

FIRST USE 10-18-1998; IN COMMERCE 6-15-2000.

SN 75-876,693, FILED 12-20-1999.

LINDA M. KING, EXAMINING ATTORNEY

# EXHIBIT B



Home



**wagtails**®
*Gourmet Dog Cookies*
*(773) 458-8771*
*www.aboutwagtails.com*

Welcome to Wagtails !

**The Wagtails® Story— How I Started Making Gourmet Dog Cookies**

My dog was very sensitive to dog cookies, especially ones that were made with food coloring. That is how "Wagtails®" began. I decided to make fresh gourmet dog cookies for my dog. I didn't want any sugar, salt, or food dyes in them. So to the health food store I went. I came up with a recipe while in the store. I felt that ingredients that were good for human consumption would be good for our beloved pets. I



bought nutritional yeast flakes, whole wheat germ and raw oats to start my recipe. I knew that we all should stay away from white flour, so I bought whole wheat flour along with cornmeal and soy flour. I added eggs and oil and a great tasting cookie was born.

I never add any other ingredients because I'm concerned about my dog's weight. I wanted to make sure that I was giving my dog a great tasting cookie with less calories. A cookie that would stand out from all the rest on the market. A cookie that I can give her an extra one or two of without feeling guilty. I know my cookies are healthy and good for her, which does my heart good. I was so happy when she started to beg for more treats. I knew then I had a great recipe! When I make the cookies, she sits by the stove waiting for them to come out. According to my clients, their pets won't go out until they get a "Wagtails Cookie." Because there are no preservatives in the cookies, I do recommend that they be refrigerated. This keeps the cookies fresh for a long time. This is also a great snack for them in the "dog days" of summer as they seem to enjoy something cool to nibble on.

[Home] [Order Process]

© 2006 - Wagtails®
orders@aboutwagtails.com

# EXHIBIT C





**Gourmet Dog Cookies**
3736 S. 53rd. Ct – Cicero, IL 60804

**TO:**

Phone (773) 458-8771
www.aboutwagtails.com



**Ingredients:**
*Nutritional Yeast Flakes, Whole Wheat Flour, Soy Flour, Corn Meal, Dry Condensed Milk, Oat Bran, Toasted Wheat Germ, Eggs and Sunflower Oil*

**& Love................**

*To place an Order: Call Wagtails @ (708) 863-7995*

# EXHIBIT D

**Int. Cl.: 16**

**Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, and 50**

**Reg. No. 2,716,029**

## United States Patent and Trademark Office

**Registered May 13, 2003**

## TRADEMARK
## PRINCIPAL REGISTER

## WAGTAILS

CAHAJLA, JANICE (UNITED STATES INDIVI-
DUAL)
3736 SOUTH 53RD COURT
CICERO, IL 60804

    FOR: SCRAPBOOK AND PHOTO ALBUM, IN
CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 12-16-2002; IN COMMERCE 12-16-2002.

SN 75-806,960, FILED 9-23-1999.

PAUL F. GAST, EXAMINING ATTORNEY

# EXHIBIT E





# EXHIBIT F

About Sergeant's - News & Events - FAQ - Links - Contact

Caring for pets since 1868

**Sergeant's**

Hurricane Katrina Effort

Dogs    Cats    Birds    Small Anima

Home » Our Products » Browse Products » Product Details

### Sergeant's® Wag'n Tail Mix™, 40 oz.,
Product Number: 22200

All Animals

Sergeant's®

Treats



⊕ enlarge

**Description**

Sergeant's® Wag'n Tail Mix™, 40 oz., combines four of your dog's favorite crunchy treats into one package: Doggie Donuts® - Donut-shaped crunchy treat, Lolli-pups® - Lollipop shaped treats for your pup!, Say Cheese® - Cheese flavored treats, People Crackers® - The people your dog loves to eat!. Trail Mix for your dog!!



Cat Owners: Click H
Important Safety Info

## Fleas & Ti

It's the season
do you k
protect y
Dogs

## Product Spo

SERGEANTS GOLD
SQUEEZE-ON
for cats & kittens



Visit Sergeant's China
华特美 Shanghai, China »

Copyright © 2005, Sergeant's Pet Care Products. All Rights Reserved. Privacy Statement.

# EXHIBIT G

About Sergeant's - News & Events - FAQ - Links - Contact



Hurricane Katrina Effort

  

Dogs   Cats   Birds   Small Anima

Home » Privacy Statement



About Serge



Vintage Advertising



*"Our mission is to enrich human-pet relationships and the lives of pets by providing exciting, effective and innovative pet care products and services"*

Sergeant's has been a leader in the pet industry for over one hundred years, earning pet lover's trust with quality products from day one. Our roots go all the way back to Polk Miller's drugstore in Richmond, Virginia in 1868. Today, with over 400 pet products, we continue our commitment to excellence and to meeting your pet's needs.

**Caring for pets since 1868**

» **Sergeant's History**
» **Timeline — "What's In a Name"**
» **Press Releases**
» **Employment Opportunities**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Sergeant's History

Sergeant's Pet Care Products, Inc. is one of America's oldest, best-known, and most respected manufacturers and marketers of pet supplies. Founded in 1868 in Richmond, Virginia Sergeant's has been based in Omaha, Nebraska since 1989.

The Sergeant's® brand is one of the icons in the United States pet supplies industry. Among consumers, the Sergeant's brand is one of the most widely recognized brands in the pet supplies category with significant brand equity. The brand carries a reputation among consumers for dependable, reliable and quality products.

History: Sergeant's was founded in 1868 by a pharmacist, Polk Miller, who formulated various health care products, such as skin and coat remedies, in his pharmacy, first for his own dogs and then for others. When Mr. Miller began to sell the products from his drug store, he named them after one of his favorite dogs, "Sergeant."

Sergeant's has long been an innovator and leader in developing and marketing health care products for pets. With "Condition Pills" in the 1890, mange medicine in 1902, vitamins for dogs early in the 1900's, and wormers and other remedies in the 1920's, Sergeant's has led the way for health care for dogs and cats.

The company introduced various improved flea and tick products throughout the first half of the twentieth century with sprays, powders and shampoos. Sergeant's played the key role in the invention of flea collars and introduced them to the market in 1962. It was a leader in the 1990's with the introduction of over-the-counter pest control squeeze-on topical products. Today the firm is well known for its Sergeant's Skip Flea® Shampoo, America's favorite flea and tick shampoo. The health care

Look at the L

Cat Owners: Click Important Safety Info

**Product Ca**

Quickly & Eas
the product y
loo

**Fleas & Ti**

It's the seaso
do you kn
protect y
Dogs

**Product Spo**

SERGEANT'S GOLD
SQUEEZE-ON
for cats & kit

innovations continue, with recent introductions including shampoos with skin care benefits and nutraceutical products with proven performance and benefits.

Following the death of the founder, Polk Miller, the company went through several ownership changes. For many years, Sergeant's was part of A.H. Robins, a large Richmond-based pharmaceuticals company. In 1989, Sergeant's was acquired by ConAgra Foods, of Omaha, Neb. and combined with another pet supplies company, Geisler Pet Products, also owned at the time by ConAgra. Since September 2000, Sergeant's Pet Care Products, has been an independent, privately owned company.

With the legacy of its founder, a pharmacist, and after many years as part of a large pharmaceutical firm, Sergeant is widely known for its health care and flea and tick products. But today Sergeant's is also a leading marketer of grooming shampoos, natural and formulated treats, toys, accessories, and bird and small animal products.



## "What's In a Name" Timeline

Sergeant's Pet Care Products Historical Timeline

| | |
|---|---|
| 1868 | Polk Miller opens a drug store in Richmond, Virginia and as an avid outdoorsman begins formulating and selling health care products for hunting dogs as a side line. |
| 1888 | Max Geisler arrives in Omaha, Nebraska from Bremen, Germany to handle a family business matter, decides to stay, and begins to import canaries from Germany for sale in the USA. This business ultimately became the Geisler brand of bird seed, now part of Sergeant's. |
| 1886 | The trade name "Sergeant's" is adopted for Mr. Miller's animal remedies and sales spread to other drug stores throughout the Southeast USA. Advertising begins in various national magazines. |
| 1913 | Polk Miller dies. The brand name Sergeant's has become widely known throughout the region. |
| 1919 | The Miller family sells the Sergeant's business to a business partnership and the company is renamed Polk Miller Products Company. During this period the product line is expanded to include vitamins, general conditioners, dog food, wormers and skin and coat remedies. |
| 1928 | Sergeant's medicines and dog food are chosen for the sled dogs used by the Commander Richard Byrd expedition to the South Pole. |
| 1929 | Sergeant's has become a nationally known brand of pet supplies. |
| 1940's | Sergeant's develops and introduces Skip® Flea Shampoo, which eventually becomes America's favorite flea and tick shampoo. |
| 1962 | Sergeant's invents and introduces flea collars for dogs. |

| | |
|---|---|
| 1967 | The Sergeant's business, led by the Sergeant's Sentry flea collar line, is purchased by A.H. Robins. |
| 1968 | Sergeant's of Canada is established. |
| 1970's | Sergeant's expands distribution through grocery stores across America. |
| 1989 | Sergeant's is acquired by ConAgra. |
| 2000 | Sergeant's is established as an independent, closely held company. |
| 2001 | Sergeant's acquires the Pet Life Foods pet treats business |
| 2004 | The Sun Pet Toys business is acquired by Sergeant's. |



Sergeant's® Dentafresh®
Teeth Cleaning Dog Treats

Copyright © 2005, Sergeant's Pet Care Products. All Rights Reserved. Privacy Statement.

# EXHIBIT H



————————— A T T O R N E Y S - A T - L A W —————————

Richard M. LaBarge
(312) 474-6646
rlabarge@marshallip.com

March 31, 2005

Kathy J. Kirschbaum
Koley Jessen P.C.
One Pacific Place
1125 South 103rd Street
Omaha, NE 68124

> Re: Sergeant's Pet Care Products
> Serial No. 78/475,569

Dear Ms. Kirschbaum:

We represent Janice Cahajla, owner of WAGTAILS mark for dog treats and other products. The mark is covered by U.S. reg. nos. 2,583,102; 2,716,029; and serial no. 78/314,074. It has come to our attention that your client, Sergeant's Pet Care Products, Inc., has applied to register WAG'N TAIL MIX for edible pet treats and pet food. We ask that your client abandon that application.

Since the proposed goods are identical to our client's goods, we believe that confusion is not only likely, but inevitable.

We assume that your client was not previously aware of our client's mark. Its good faith can be confirmed by withdrawing the application.

We look forward to hearing from you.

Sincerely,

Richard M. LaBarge

RML/mg

# EXHIBIT 1

# KOLEY JESSEN P.C.
A Limited Liability Organization

ATTORNEYS AT LAW

ONE PACIFIC PLACE, SUITE 800
1125 SOUTH 103 STREET
OMAHA, NE 68124-1079

TELEPHONE (402) 390-9500
FACSIMILE (402) 390-9005

KATHY.KIRSCHBAUM@KOLEYJESSEN.COM                                              DIRECT DIAL: (402) 343-3702
KATHY J. KIRSCHBAUM

April 18, 2005

Richard M. LaBarge
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606-6357

      Re:    Sergeant's Pet Care Products, Inc.
            Serial No. 78/475,569
            Our File No. 5712-0003

Dear Mr. LaBarge:

      We are in receipt of your letter dated March 31, 2005. We appreciate you bringing Ms. Cahajla's trademark registrations to our attention. Would you please provide us with additional information regarding the extent of her use of such marks, especially "WAGTAILS" in International Class 31 (Registration No. 2,583,102), her marketing channels and major customers? At this time, we believe that the likelihood of confusion between the marks is unlikely. Therefore, we would appreciate this additional information in order to prepare an offer of some type of co-existence arrangement between the parties. For more information regarding our client, please visit its website at www.sergeants.com.

      This letter is written without prejudice to any of our client's rights or remedies, all of which are expressly reserved. We appreciate your assistance in this matter.

                        Sincerely yours,

                        K. Kirschbaum

                        Kathy J. Kirschbaum

KJK/sk
cc:    Joel Adamson
       Roberta Christensen
       Linda Dammann

285838.1

# EXHIBIT J



## MARSHALL, GERSTEIN & BORUN LLP

─────────── A T T O R N E Y S · A T · L A W ───────────

Richard M. LaBarge
(312) 474-6646
rlabarge@marshallip.com

May 13, 2005

Kathy J. Kirschbaum
Koley Jessen P.C.
One Pacific Place
1125 South 103rd Street
Omaha, NE 68124

Re:    Sergeant's Pet Care Products/WAGTAILS
Our File N

Dear Ms. Kirschbaum:

Thank you for your April 18 letter.

Unless Sergeant's is planning on marketing its treats to someone other than pet owners or veterinarians, conflict is inevitable. Jan Cahajla has been selling her WAGTAILS dog treats to pet owners 1) through a retail store, 2) through several veterinarians' office, 3) by mail, and 4) through a website. There is no possibility of carving out some other channel of distribution that would not reach her customers. Even if her federal registration were not alone enough to give her nationwide priority, her current customers can <u>already</u> be found in half a dozen different states, and she is negotiating with a number of other major pet stores concerning distribution. While her business is obviously smaller than your client's business, it is a growing one.

Sergeant's may think that it can dispel confusion about its <u>own</u> products by prominently associating the WAG'N TAIL MIX name with the SERGEANT'S name. However, doing so will only <u>create</u> customer confusion about the source of <u>Ms. Cahajla's</u> products. Sergeant's use and promotion of WAG'N TAIL MIX treats would confuse Ms. Cahajla's customers about the legitimacy of her WAGTAILS treats. Because Ms. Cahajla's other products are sold under the same mark, any such taint would affect her entire business. Causing this kind of confusion is wrong. <u>See</u> e.g., *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219 (D. Colo. 1976).

Ms. Cahajla has devoted a lot of time and effort in developing her mark, and its financial and intangible value are both very important to her. She is not interested in negotiating this issue or trying to convince your client of the extent of the rights that her federal registration gives her.



May 13, 2005
Page 2

       Please urge your client to respect Ms. Cahajla's smaller business, abandon its plans to use a confusingly similar name, and choose a new one. What would Sergeant's reaction be if the priority issue was reversed: if it was Sergeant's that had been selling WAG'N TAIL MIX treats for five years, and Ms. Cahajla that was just introducing WAGTAILS treats. Would Sergeant's still feel that the two uses can co-exist?

                      Sincerely,

                      Richard M. LaBarge

RML/sm